## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

NEHEMIAH ARMSTRONG
ADC #148538                                                          PETITIONER

VS.                              5:14CV00364 BSM/JTR

WENDY KELLEY, Director,
Arkansas Department of Correction[1]                              RESPONDENT

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent

to Chief United States District Judge Brian S. Miller. You may file written objections

to all or part of this Recommendation. If you do so, those objections must: (1)

specifically explain the factual and/or legal basis for your objection; and (2) be

received by the Clerk of this Court within fourteen (14) days of the entry of this

Recommendation. The failure to timely file objections may result in waiver of the

right to appeal questions of fact.

Mail any objections to:

>    Clerk, United States District Court
>    Eastern District of Arkansas
>    600 West Capitol Avenue, Suite A149
>    Little Rock, AR 72201-3325

---

[1] Wendy Kelley, who is the current Director of the Arkansas Department of Correction, is automatically substituted as Respondent pursuant to Fed. R. Civ. P. 25(d).

# I. Background

Pending before the Court is a § 2254 Petition for a Writ of Habeas Corpus filed by Petitioner, Nehemiah Armstrong ("Armstrong"). *Doc. 2*. Before addressing Armstrong's habeas claims, the Court will review the procedural history of the case in state court.

On September 14, 2010, a Pulaski County jury convicted Armstrong of: (1) two counts of Class Y felony terroristic acts; (2) four counts of Class B felony terroristic acts; and (3) two counts of aggravated battery. *Doc. 15-20 at 10, 51*. He received an aggregate sentence of fifty-six years in the Arkansas Department of Correction. *Id.*

On September 14, 2011, the Arkansas Court of Appeals affirmed in Armstrong's direct appeal. *Armstrong v. State*, 2011 Ark. App. 530, 2011 WL 4067284 (Ark. Ct. App. 2011).

On November 16, 2011, Armstrong filed a *pro se* Rule 37 Petition, asserting various postconviction claims. *Rule 37 Tr. 24-35*. On March 1, 2012, the trial court entered an Order denying Rule 37 relief. *Rule 37 Tr. 36-29*. On March 20, 2014, the Arkansas Supreme Court affirmed the denial of Rule 37 Relief. *Armstrong v. State*, 2014 Ark. 127, 2014 WL 1096302 (Ark. 2014).

On October 1, 2014, Armstrong initiated this habeas action. *Doc. 2*. In his Petition, he argues that: (1) he is "actually innocent;" (2) the prosecution engaged

in misconduct at trial by using "false" evidence; and (3) he received ineffective assistance of counsel. Respondent argues that Armstrong's habeas claims either: (1) fail on the merits; or (2) are procedurally defaulted. *Doc. 7.*

For the reasons discussed below, the Court recommends that the Petition be denied, and that the case be dismissed, with prejudice.

## II. Discussion

### A.    Trial Testimony

Before addressing Armstrong's habeas claims, the Court will briefly summarize the pertinent trial testimony.[2]

The victims, Marie and Rodney Dozier, were in their Jacksonville home on the evening of January 4, 2010. They testified that multiple gunshots were fired through their back patio door, seriously injuring both of them. They did not see the shooter.

Dominque Givens testified that, on the night of January 4, 2010, he was riding with Donnell White when they went to Armstrong's house to pick him up. *Trial Tr. 222.* At Armstrong's house, Givens saw Armstrong put a handgun in a backpack. *Trial Tr. 223.* Givens testified it was a 9mm pistol that he had seen Armstrong with

---

[2] The Court has obtained a copy of the trial transcript ("Trial Tr.") from the Clerk of the Arkansas Supreme Court, and made it a part of the record in this case by marking it "Court's Exhibit A."

previously. *Trial Tr. 223*. The three men left and picked up a fourth man, Corinthian Parker.

In the car, the four men discussed finding a house to rob. *Trial Tr. 224*. They rode around and decided to rob the Dozier home. *Trial Tr. 226*. Armstrong was the only occupant in the vehicle with a gun. White dropped off Armstrong, Givens, and Parker in front of the home, and they walked around to the back of the house where they could see the Doziers inside. *Trial Tr. 226*.

Armstrong was lifted over a backyard gate and opened it from the inside. *Trial Tr. 228*. Armstrong, who complained that his hands were cold, handed his gun to Givens. *Trial Tr. 229*. According to Givens, Parker then took the gun from him and they all proceeded to the back porch. While the three men were standing in the porch area, Givens "was talking to [Armstrong], and I turned around, and [Parker] was firing." *Trial Tr. 230*.

Parker fired seven or eight shots, and then asked Armstrong for another clip. Armstrong went into his backpack and gave Parker another clip. *Id.* Parker placed the fresh clip in the gun, but it would not fire. *Trial Tr. 231*. The men ran and White picked them up nearby. *Trial Tr. 231*.

Jacksonville Police Department Detective Jerry Keefer recovered eight 9mm shell casings from the area of the Doziers' back porch. *Trial Tr. 284*. He also recovered four expended bullets inside the residence. *Trial Tr. 290*.

Detective Keefer testified that, on February 23, 2010, he participated in a search of Armstrong's residence. *Trial Tr. 297*. The police recovered a Ruger 9mm handgun and a fully-loaded magazine inside of an air vent. *Trial Tr. 297*.  In an unrecorded statement to Detective Keefer, on March 10, 2010, Armstrong told him that he bought the 9mm in November or December of 2009. *Trial Tr. 298*. Armstrong "advised he knew it looked bad that the gun was found at his house. He wanted us to arrest the right person for the shooting. He advised he was there [at the Dozier home on January 4, 2010], but was not the shooter." *Trial Tr. 299, 328*. A state crime lab examiner testified that the eight shell casings recovered from the Dozier home were fired from the 9mm recovered from Armstrong's home. *Trial Tr. 354*.

Armstrong did not call any witnesses in his defense.

### B.    Armstrong's Habeas Claims

#### 1.    "Actual Innocence"

Armstrong makes a freestanding claim that he is "actually innocent." In support of this claim, he relies on four so-called affidavits: (1) an April 24, 2011 non-notarized "affidavit" from Givens, stating that his trial testimony was false and Armstrong was "not involved in the shooting;" (2) an April 26, 2010 non-notarized "affidavit" from White, stating that Armstrong was not present and had nothing to do with the January

4, 2010 shooting; (3) an undated and non-notarized "affidavit" from Parker, stating that Armstrong was not present and had nothing to do with the January 4, 2010 shooting; and (4) a notarized July 8, 2014 affidavit from Kenneth Kindall, an ADC inmate, who states that White told him that Armstrong was "innocent" and was at home "watching the 9:00 news" when the shooting occurred. *Doc. 2 at 17-21.* Armstrong also relies on an October 11, 2012 newspaper article reporting on Givens's guilty plea to perjury, based on his trial testimony in another prosecution of Armstrong.[3] *Doc. 2 at 20.*

Armstrong's "actual innocence" argument fails for multiple reasons. First and foremost, the United States Supreme Court has not recognized the viability of an actual innocence claim in a non-capital habeas case. *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence"); *see also Burton v. Dormire*, 295 F.3d 839, 848 (8th Cir. 2002) ("we have squarely rejected the notion that a prisoner may receive a writ simply because he claims he is innocent"). However, the Court has characterized actual innocence, if proven, as a "gateway"

---

[3] As authorities investigated the shooting of the Dozier home in Jacksonville, they developed the same suspects in another "shoot up" of a home in Sherwood, which also took place in January of 2010. *Doc. 2 at 20.* Givens cooperated and implicated Armstrong as the organizer of a "crew" to commit armed robberies "that would build them a reputation as ruthless." *Id.* In exchange for his cooperation in both cases, Givens entered guilty pleas to various charges and received an aggregate twenty-five year sentence. *Id.*

In Armstrong's trial for the Sherwood shooting (which was after the trial in this case), the prosecution called Givens as a witness. *Id.* However, he denied any knowledge of Armstrong's involvement, and testified that he did not know who the shooter was. The charges against Armstrong for the Sherwood shooting were subsequently dismissed. *Id.*

Based on Givens's testimony in Armstrong's trial for the Sherwood shooting, he was charged with perjury. He later entered a guilty plea to perjury, and was sentenced to thirty years in prison. *Id.*

through which a habeas petitioner may assert a claim that is otherwise untimely or procedurally barred.[4]

Insofar as Armstrong may be attempting to assert the *McQuiggin/Schlup* actual innocence "gateway" exception to overcome an otherwise untimely or procedurally barred claim, he has failed to meet its "threshold requirement." The evidence at trial established that: (1) Armstrong admitted owning the gun used in the shooting; (2) the 9mm shell casings recovered from the crime scene were fired from Armstrong's gun; (3) Armstrong had the gun in an air vent in his home one month after the shooting took place; and (4) Armstrong admitted to police that he was at the Dozier home when the shooting took place.

All of that evidence was *consistent with* Givens's trial testimony that Armstrong provided the gun used in the shooting and that he was present at the shooting. Against that backdrop, the supposed recantation and alibi affidavits hardly establish that "no juror, acting reasonably, would have voted to find [Armstrong] guilty beyond a reasonable doubt" after considering the purported "new evidence."[5] *See United States*

---

[4] *See McQuiggin*, 133 S. Ct. at 1924 ("tenable actual-innocence gateway pleas are rare: A petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.") (*quoting Schlup v. Delo*, 513 U.S. 298, 329 (1995)) (internal quotations and alterations omitted). The actual-innocence exception requires a habeas petitioner to come forward with "new reliable evidence" which was "not available at trial through the exercise of due diligence." *Schlup*, 513 U.S. at 324.

[5] The same is true for Givens's guilty plea to perjury for his testimony in Armstrong's trial for the Sherwood shooting. At most, this evidence undermined Given's credibility. However, defense counsel vigorously attacked Givens's credibility in the trial in this case. Among other things, defense counsel cross-examined Givens about: (1) the plea deal he struck to testify against Armstrong in exchange for a reduced sentence; (2) his prior felony criminal history; and (3)

*v. Rouse*, 410 F.3d 1005, 1009 (8th Cir. 2005) (the recantation of a material witness is viewed with "suspicion" because "[t]he stability and finality of verdicts would be greatly disturbed if courts were too ready to entertain testimony from witnesses who have changed their minds, or who claim to have lied at the trial.") (*quoting United States v. Grey Bear*, 116 F.3d 349, 350 (8th Cir.1997)); *see also See Dansby v. Norris*, 682 F.3d 711, 717 (8th Cir. 2012) ("Latter-day impeachment evidence, however, will seldom, if ever, make a clear and convincing case that no reasonable jury could believe the core of the witness's account.") (internal quotations omitted), *vacated on other grounds*, 133 S. Ct. 2767 (2012).

### 2.    Prosecutorial Misconduct

Armstrong also argues that his Due Process rights were violated when the prosecution falsely "misrepresented" evidence at trial that: (1) he controlled the  gun that was used in the shooting; and (2) he admitted that he was present at the shooting.[6]

Armstrong's assertion that the prosecution somehow used "false" evidence is conclusory and unsupported. At trial, Detective Keefer testified that: (1) Armstrong told him he purchased the gun in November or December of 2009; (2) Armstrong admitted that he was present at the shooting of the Dozier home on January 4, 2010;

---

his admission that he initially lied to police and told them that he was not present at the Dozier shooting on January 4, 2010.

[6] Among other things, Respondent argues that Armstrong's prosecutorial misconduct claim is procedurally defaulted. Because it is more efficient to simply proceed to the merits, the Court is not required to resolve Respondent's procedural default argument. *See Kemp v. Hobbs*, 2012 WL 250229 (E.D. Ark. June 28, 2012) (*citing* 28 U.S.C. § 2254(b)(2) and *McKinnon v. Lockhart*, 921 F.2d 830, 833 n.7 (8th Cir.1990) (*per curiam*) ("Where it is more efficient to do so . . . this Court may resolve [habeas] claims on the merits rather than navigating through a procedural-default thicket.").

and (3) the gun was seized from Armstrong's home on February 23, 2010. While Armstrong disputes the credibility of Detective Keefer's testimony, defense counsel cross-examined Detective Keefer at trial. Armstrong has made no showing that the prosecution in any way "false" evidence or misrepresented any facts.

### 3.    Ineffective Assistance of Counsel

Finally, Armstrong argues that he received ineffective assistance of counsel because his lawyer: (1) did not challenge the sufficiency of the evidence to support his accomplice liability; (2) failed to call Parker or White as defense witnesses; (3) failed to adequately cross-examine the prosecution witnesses; and (4) failed to investigate and present a defense.[7]

As to Armstrong's accomplice liability, a person is criminally liable as an accomplice "if, with the purpose of promoting or facilitating the commission of an offense, he: (1) Solicits, advises, encourages, or coerces the other person to commit it; or (2) Aids, agrees to aid, or attempts to aid the other person in planning or committing it[.]" Ark. Code Ann. § 5-2-403 (Repl. 2013). However, a person cannot

---

[7] In Armstrong's Rule 37 appeal, the Arkansas Supreme Court applied the ineffective-assistance standard established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *Armstrong*, 2014 Ark. 127 at *2. Under *Strickland*, a prisoner must establish that: (1) his attorney's conduct "fell below an objective standard of reasonableness;" and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687-88.

In evaluating an ineffective assistance counsel claim in a habeas action, "AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (*quoting Cullen v. Pinholster*, 131 S. Ct. 1388, 1410 (2011)). Thus, the Court must give "substantial deference to the state court's predictive judgment," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.*

be convicted based on accomplice testimony "unless corroborated by other evidence tending to connect the defendant . . . with the commission of the offense." Ark. Code Ann. § 16-89-111(e)(1)(A) (Repl. 2013).[8]

Independent of Givens's accomplice testimony, there was ample evidence "tending to connect [Armstrong] with the crimes in this case." The victims' testimony established that the crimes occurred. Moreover, the gun that was used to shoot the victims was found in Armstrong's possession shortly after the crime, and he admitted to Detective Keefer that he obtained the gun shortly before the crime. Finally, Armstrong admitted to Detective Keefer that he was present when the shooting occurred. Thus, there was strong evidence independently connecting Armstrong to the crime.

Armstrong's remaining allegations of ineffective assistance of counsel fall into the category of criticism of defense counsel's tactical decisions at trial. See United States v. Thomas, 992 F.2d 201, 205 (8th Cir. 1993) ("Trial counsel's decisions concerning the theory of defense, testimony of witnesses and whether [defendant]

---

[8] Under Arkansas law, the corroboration of an accomplice's testimony "must be evidence of a substantive nature, since it must be directed toward proving the connection of the accused with the crime, and not directed toward corroborating the accomplice's testimony. Corroborating evidence need not, however, be so substantial in and of itself to sustain a conviction. Rather, it need only, independently of the testimony of the accomplice, tend in some degree to connect the defendant with the commission of the crime. The test for corroborating evidence is whether, if the testimony of the accomplice were totally eliminated from the case, the remaining evidence independently establishes the crime and tends to connect the accused with its commission. The presence of an accused in the proximity of a crime, opportunity, and association with a person involved in a crime in a manner suggestive of joint participation, are relevant factors in determining the connection of an accomplice with the crime." *Collins v. State*, 2014 Ark. App. 551, 444 S.W.3d 889 (Ark. 2014) (internal citations omitted).

should testify are all tactical decisions. We cannot rely on hindsight to evaluate defense counsel's trial strategy[.]") (internal quotations omitted).

In light of the strong evidence establishing Armstrong's guilt, he has not shown a reasonable probability that the result of trial would have been different had counsel pursued a different strategy. Under the deferential standard of review this Court must apply in habeas cases, the Arkansas Supreme Court's rejection of Armstrong's ineffective-assistance of counsel claims was neither "contrary to" nor an "unreasonable application of clearly established federal law," nor was it based on an "unreasonable determination of the facts." See 28 U.S.C. § 2254(d) and (e).

## III. Conclusion

IT IS THEREFORE RECOMMENDED THAT the Petition for a Writ of Habeas Corpus be DENIED, and this case be DISMISSED, WITH PREJUDICE. IT IS FURTHER RECOMMENDED THAT a Certificate of Appealability be DENIED pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases.

Dated this 20th day of January, 2016.

_____
UNITED STATES MAGISTRATE JUDGE

11